IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ARESHA VINSON, on behalf of A.L.W., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15-cv-477-TFM |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I. INTRODUCTION**

Plaintiff Aresha Vinson ("Plaintiff" or "Vinson") filed this lawsuit on behalf of her child, A.L.W., challenging a final judgment by Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, in which she determined that A.L.W. is not "disabled" and therefore, not entitled to supplemental security income benefits. Vinson's application was denied at the initial administrative level. Vinson then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ determined that A.L.W. is not disabled. The Appeals Council rejected a subsequent request for review. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen,* 792 F.2d 129, 131 (11th Cir. 1986).

The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1. The court has jurisdiction over this lawsuit pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the court concludes that the Commissioner's decision denying A.W.P. supplemental security income benefits should affirmed.

## II. STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (2012). The sequential analysis for determining whether a child claimant is disabled is as follows:

> 1. If the claimant is engaged in substantial gainful activity, he is not disabled.
>
> 2. If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment. If the claimant's impairment is not severe, he is not disabled.
>
> 3. If the impairment is severe, the Commissioner determines whether the impairment meets the durational requirement and meets, medically equals, or functionally equals in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment satisfies this requirement, the claimant is presumed disabled.

*See* 20 C.F.R. § 416.924(a)-(d) (2015).

The Commissioner's regulations provide that if a child's impairment or impairments are not medically equal, or functionally equivalent in severity to a listed impairment, the child is not disabled. *See* 20 C.F.R. § 416.924(d)(2). In determining whether a child's impairment functionally equals a listed impairment, an ALJ must consider the extent to which the impairment limits the child's ability to function in the following six "domains" of life: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical

well-being. *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1279 (11th Cir. 2004); 20 C.F.R. § 416.926a(b)(1). A child's impairment functionally equals a listed impairment, and thus constitutes a disability, if the child's limitations are "marked" in two of the six life domains, or if the child's limitations are "extreme" in one of the six domains. *Shinn*, 391 F.3d at 1279; 20 C.F.R. § 416.926a(d).

In reviewing the Commissioner's decision, the court asks only whether the findings concerning the steps are supported by substantial evidence. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quotation marks omitted). "The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (quotation marks and citation omitted).

### III. COMMISSIONER'S DECISION AND ISSUES

#### A.    The Commissioner's Decision

A.L.W. was three years old at the hearing before the ALJ. R. R. 44. On January 19, 2012, Vinson protectively filed for supplemental security income, alleging that on the date of A.L.W.'s birth, July 18, 2010, he became disabled due to asthma. R. 24, 126. The ALJ followed the regulations' required three steps when he analyzed A.L.W.'s claim and concluded that A.L.W. is

not disabled and, therefore, denied his claim for supplemental social security benefits. At step one, the ALJ found that A.L.W. has not engaged in substantial gainful activity. R. 27. At step two, the ALJ found that A.L.W. suffers from the severe impairment of asthma. R. 27. At step three, the ALJ found that A.L.W.'s impairment did not meet or medically equal in severity the criteria for any impairment listed at 20 C.F.R., part 404, Subpart P, Appendix 1. R. 27-28. In addition, the ALJ concluded that A.L.W.'s impairment did not functionally equal a listing. R. 28-37. Consequently, the ALJ determined that A.L.W. has not been disabled since January 19, 2012, the date the application was filed. R. 37.

**B.    Plaintiff's Claim**

Vinson presents the following claim: "The Commissioner's decision should be reversed because the ALJ committed legal error at step three of the evaluation process." Pl.'s Br. 3, Doc. No. 11.

## IV.   DISCUSSION

**A.    A.L.W. Did Not Meet or Medically Equal a Listing**

Vinson argues that A.L.W. met or medically equaled[1] Listing 103.03B or 103.03C[2] for asthma, which requires, in relevant part:

---

[1]Vinson does not challenge the ALJ's decision that A.L.W.'s impairment did not functionally equal a listing. Pl's Br. 3-10; R. 28-37.

[2]Although Vinson faults the ALJ for not discussing subsection 103.03C, Pl.'s Br. 9, Doc. No. 11, Vinson does not suggest subsections 103.03A or 103.03D apply or that the ALJ erred in not addressing them.

B. *Attacks* (as defined in 3.00C), in spite of prescribed treatment and requiring *physician* intervention, occurring at least once every 2 months or *at least six times a year*. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

or

C. Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the following:

1. Persistent prolonged expiration with radiographic or other appropriate imaging techniques evidence of pulmonary hyperinflation or peribronchial disease; or

2. *Short courses of corticosteroids that average more than 5 days per month for at least 3 months during a 12-month period*;

20 C.F.R. Part 404, Subpt. P, App. 1, § 103.03(B) & (C) (emphasis added). "Attacks of asthma . . . are defined as prolonged symptomatic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or *antibiotic* administration or *prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting*. . . ." 20 C.F.R. Part 404, Subpt. P, App. 1, § 3.00C (emphasis added).

The ALJ gave great weight to the opinion of Robert Heilpern, M.D., a state agency physician with the Disability Determination Service ("DDS"), who stated that A.L.W.'s impairment was severe but did not medically equal the Listings. R. 27-28, 55, 60-62. The ALJ gave great weight to Dr. Heilpern's opinion because it was "consistent with the medical record and the claimant's respiratory complaints associated with asthma." R. 27. A.L.W.'s pediatrician, Hector Gutierrez, M.D.,  treated A.L.W.'s asthma on multiple occasions, and on December 19, 2012, Dr. Gutierrez stated that his "symptoms are well controlled at this time." R. 413. Vinson testified that A.L.W. had three or four asthma attacks in the last year and was not hospitalized for them, R. 45, but he has recurrent wheezing despite his asthma medications, R. 48. Vinson testified

A.L.W. had frequent bouts of Respiratory Syncytial Virus (RSV), but based on Dr. Gutierrez's opinion, the ALJ found the impairment was nonsevere. R. 27.

Turning to the question whether A.L.W. had an impairment or combination of impairments that meets or medically equals a Listing, the ALJ then stated:

> The Medical Listings (20 CFR Part 404, Appendix 1, Subpart P) outline the findings, which must be present under each of the body systems for an impairment to be found disabling. No examining or treating source or medical expert has concluded that the claimant's impairment meets or equals a listed impairment. The claimant's impairment has been compared to all listed impairments, including Listing 103.03, which deals with asthma and is met when the claimant has had asthma attacks in spite of prescribed treatment requiring physician intervention, occurring at least once every 2 month or at least six times a year. In this case, the frequency of physician intervention and hospitalizations of more than 24 hours for control of asthma attacks has not been met. No treating, consulting, or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. The criteria can be applied only if the impairment persists despite the fact that the individual is following the prescribed treatment. The undersigned finds that the severity of the claimant's impairment does not meet the requirements of any of the impairments listed by the Commissioner in Appendix 1.

R. 27-28.

For an impairment to meet a listing, "it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted). Vinson maintains that A.L.W.

meets the criteria for Listing 103.03B because, despite his daily prescribed medications of an inhaled corticosteroid, nebulized Albuterol, and leukotrine inhibitor, he needed physician intervention for his asthma and related upper respiratory impairments on seven occasions throughout a twelve-month period. Pl.'s Br. 6-7, Doc. No. 11. Of the occasions Vinson identifies, however, only two of them, February 18, 2012,[3] and June 16, 2012,[4] satisfy the criteria of Listing 103.03B. The other treatment dates on which A.L.W. rely do not satisfy Listing 103.03B:

- June 14, 2012: A.L.W. left before seeing a physician, and he was prescribed only an analgesic and antipyretic medication. R. 365-66.

- August 14, 2012: A.L.W. presented with a fever and bump on his head, not an asthma attack. He did not receive intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Instead, he received prescriptions for various medications. R. 387-90.

- December 10, 2012: A.L.W. did not receive intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Instead, he received prescriptions for various medications. R. 460-62.

- January 23, 2012: A.L.W. did not receive intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Instead, he received a prescription for various medications. R. 418.

- February 22, 2013: A.L.W. did not receive intravenous bronchodilator or antibiotic administration or prolonged inhalational bronchodilator therapy in a hospital, emergency room or equivalent setting. Instead, he received a prescription for

---

[3]On February 18, 2012, A.L.W. was diagnosed with fever, cough, congestion, and wheezing. R. 275. The impression was asthma/reactive airway disease, acute exacerbation, and pharyngitis. R. 276. He was treated with an intramuscular injection of antibiotics and prescribed various medications. R. 276.

[4]On June 16, 2012, A.L.W. presented with a cough and fever. R. 324. The impression was fever, bronchitis, and viral syndrome, and the antibiotic azithromycin was administered. https://www.nlm.nih.gov/medlineplus/druginfo/meds/a697037.html (last accessed Feb. 9, 2016) (azithromycin is in the class of macrolide antibiotics).

various medications. R. 418-19.

Consequently, A.L.W. does not meet the criteria of Listing 103.03B that he have asthma attacks, in spite of prescribed treatment and requiring the specified physician intervention, at least every two months or six times in a year.

Vinson maintains that A.L.W. meets the criteria of Listing 103.03C, arguing that A.L.W. was administered short courses of corticosteroids on four occasions in a twelve-month period, including February 17, 2012 (Prednisolone), February 21, 2012 (Prednisolone), August 27, 2012 (Prednisolone), and February 22, 2013 (Prelone). Pl.'s Br. 7, Doc. No. 11. The February 21, 2012, prescription is from Wallace Falero, M.D., who treated A.L.W. on February 18, 2012, and prescribed Orapred (Prednisolone)[5] to be taken for six days, therefore it satisfies the criteria in Listing 103.03C. R. 155, 281. However, Vinson does not show the remaining prescriptions were for short courses of corticosteroids that averaged more than five days per month:

- February 17, 2012: The prescription drug record on which Vinson relies does not indicate how long the course of Prednisolone treatment lasted. R. 155. The court has not found contemporaneous medical treatment records from the prescriber, K. Doles, indicating treatment or a prescription on about February 17, 2012.

- August 27, 2012: The prescription drug record on which Vinson relies does not indicate how long the course of drug treatment lasted. R. 157. The court has not found contemporaneous medical treatment records from the prescriber, F. Chambers, indicating treatment or a prescription on about August 27, 2012.

- February 22, 2013: The prescription that A.L.W. received was for only five days of Prelone and does not satisfy the requirement that the course of corticosteroid last "*more than 5 days* per month." 20 C.F.R. Part 404, Subpart P, App. 1, § 103.03C (emphasis added); R. 419.

Vinson thus shows A.L.W. had only one short course of corticosteroids that averaged more than 5

---

[5]Orapred is a brand name for prednisolone, which is in the class of corticosteroids. *See* https://www.nlm.nih.gov/medlineplus/druginfo/meds/a615042.html (last accessed Feb. 9, 2016).

days per month during a twelve-month period. Consequently, A.L.W. does not meet the criteria

under Listing 103.03C.


Vinson argues that A.L.W.'s "asthmatic and upper respiratory impairments of record

medically equal Listing 103.03B and/or C."[6] Pl.'s Br. 9, Doc. No. 11. To "medically equal" a

listing, a claimant's impairment must be "at least of equal medical significance" to the required

criteria in the Listing. 20 C.F.R. § 416.926(b)(1).[7]  In addition, the regulations provide that the ALJ

---

[6]Vinson refers to "upper respiratory impairments" but identifies no relevant listing other than asthma.

[7]The regulation lists three ways to find medical equivalence:
(1)(i) If you have an impairment that is described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, but--
    (A) You do not exhibit one or more of the findings specified in the particular listing, or
    (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
(ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

(2) If you have an impairment(s) that is not described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairment(s) are at least of equal medical significance to those of a listed impairment, we will find that your impairment(s) is medically equivalent to the analogous listing.

(3) If you have a combination of impairments, no one of which meets a listing described in the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter (see § 416.925(c)(3)), we will compare your findings with those for closely analogous listed impairments. If the findings related to your impairments are at least of equal medical significance to those of a listed impairment, we will find that your combination of impairments is medically equivalent to that listing.

20 C.F.R. § 416.926(b).

will "consider all evidence in your case record about your impairment(s) and its effects on you that is relevant to this finding. . . ." 20 C.F.R. § 416.926(c). An ALJ's finding regarding medical equivalence must be supported by an opinion as to medical equivalence from a physician or psychologist designated by the Commissioner. 20 C.F.R. § 416.926(c); SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996) ("longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight"); *see also Wilkinson o/b/o Wilkinson v. Bowen*, 847 F.2d 660, 663 (11th Cir.1987) (finding no error in an ALJ's reliance on the opinion of a non-examining physician in determining medical equivalence; observing that "[w]hen considering medical equivalence, the Secretary must consider the medical opinion of one or more designated physicians on an advisory basis").

Here, Dr. Heilpern, a state agency physician, gave the opinion that A.L.W.'s impairment was severe but did not medically equal the Listings.[8] R. 27-28, 55, 60-62. The ALJ gave great weight to Dr. Heilpern's opinion because it was consistent with the medical record and the complaints associated with asthma, The ALJ's decision was proper. *See Wilkinson*, 847 F.2d at 663 (explaining an that the ALJ could rely on the opinion of a non-examining medical consultant in deciding medical equivalence). The ALJ observed that "[n]o examining or treating source or medical expert has concluded that the claimant's impairment meets or equals a listed impairment."

---

[8]The form Dr. Heilpern signed was a SSA-831-U3 and not technically SSA-831-U5, as specified by SSR 96-6p. R. 60-62; SSR 96-6, 1996 WL 374180, *3 ("The signature of a State agency medical or psychological consultant on an SSA-831-U5 (Disability Determination and Transmittal Form) . . . ensures that consideration by a physician (or psychologist) designated by the Commissioner has been given to the question of medical equivalence . . . ."). However, it appears to serve the purpose described in SSR 96–6p.

R. 27-28. Vinson relies on the same medical evidence to support medical equivalence as Vinson raised to show that A.L.W. met a listing. Pl.'s Br. 9, Doc. No. 11. For the reasons explained in the previous section and in the following section, the medical evidence simply does not support Vinson's claim of medical equivalence.

**B.      The ALJ's Decision**

Vinson argues that, notwithstanding A.L.W.'s failure to meet or medically equal a listing, the ALJ's analysis in making the meets/medically equals determination was "woefully inadequate." Pl.'s Br. 9, Doc. No. 11. Vinson argues that in the rationale portion of the decision, R. 31, 37, the ALJ failed to address the specific physician interventions and hospitalizations Vinson lists, provided no analysis regarding whether A.L.W. satisfied subsection C of the asthma listing, left out of the rationale paragraph Dr. Gutierrez's June 6, 2012, note that A.L.W.'s "asthma is suboptimally controlled," and repeatedly failed to incorporate the whole of Dr. Gutierrez's comment on December 19, 2012, that A.L.W.'s asthma was "well controlled *at this moment.*" Pl.'s Br. 9-10, Doc. No. 11; R. 27-28, 31, 37, 396, 413 (emphasis added).

The paragraph of the ALJ's decision finding that A.L.W. did not meet Listing 103.03 did not point to specific medical records. R. 27-28. Nevertheless, the ALJ referred to the evidence, and the decision demonstrates that the ALJ considered all the medical evidence and listings, as shown in the ALJ's discussion whether A.L.W. had a severe impairment, R. 27, and whether A.L.W. functionally equaled a listing, R. 36-37. "'An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.'" *Ward v. Astrue*, 1:11-cv-147-TFM, 2012 WL 607642, *9 (M.D. Ala. 2012) (citations omitted). There is substantial evidence in the record to support the ALJ's decision.

11

On August 3, 2011, A.L.W. saw pediatric specialist Dr. Gutierrez for evaluation of A.L.W.'s recurrent wheezing. R. 251. Dr. Gutierrez noted that A.L.W.:

> has been on inhaled corticosteroids (Pulmicort 0.25 b.i.d.) for about three months and nebulized Albuteral. He had just finished a course of Prednisone for five days that was prescribed in the ED and he has received oral steroids for five times in the past four months or so. He has not been admitted to the hospita[l] but just emergent ED visits.

R. 251. Dr. Gutierrez stated that A.L.W. "has likely asthma." R. 252. He indicated A.L.W.'s mother "can use more Albuterol at home with close follow up as needed." R. 251. He also increased the Pulmicort to 0.5 and added a leukotriene inhibitor (Singulair 4) once a day. R. 251-52. At a follow up on September 7, 2011, Dr. Gutierrez stated that over the past weekend, A.L.W. "developed some upper respiratory symptoms that led to more cough and required extra aerosol bronchodilators." R. 248. He reported that A.L.W. "may have had a mild flare over the weekend but I believe he is recovering well now." R. 248.

The ALJ recounted Dr. Gutierrez's treatment of A.L.W. on June 6, 2012, when Dr. Gutierrez indicated that A.L.W.'s asthma was suboptimally controlled, possibly due to a significant allergic rhinitis component and possibly a gastroesophageal reflux disease ("GERD") component. R. 29; R. 319. A.L.W. visited the emergency room on June 16, 2012, with a fever and cough; was diagnosed with fever, bronchitis, and viral syndrome; treated; prescribed medication; and discharged. R. 29-30; R. 324-56. Notably, on the June 16, 2012, visit, A.L.W.'s lungs were "fully expanded and clear," R. 336, and his breathing was "unlabored." R. 341. On September 5, 2013, Dr. Gutierrez treated A.L.W., noting that he had a history of asthma and was doing well, but over the past ten to fourteen days he had developed an acute illness accompanied by respiratory symptoms and rash that improved within two days. R. 30, 394. Dr. Gutierrez noted that A.L.W.'s

12

chest was clear on auscultation bilaterally, that he was recovering from a "mild asthma flare," and Dr. Gutierrez added Prilosec to his regimen of medications. R. 30, 394. On December 10, 2012, A.L.W. presented at Hayneville Family Health with complaints of asthma, chest congestion, wheezing, and coughing, among other things. R. 30, 459-62. He was diagnosed with allergic rhinitis and acute upper respiratory infection. R. 462. His medications were adjusted, and he was discharged home. R. 30, 462. On December 19, 2012, Dr. Gutierrez examined A.L.W. and noted that A.L.W.'s chest was "well expanded, symmetric, and clear on auscultation," and that his "symptoms are well controlled at this time." R. 413.

On February 22, 2013, A.L.W. presented to East Montgomery Pediatrics, complaining of asthma, cough, and fever. R. 30, 419. Dr. Roque noted mild wheezes and mild rales. R. 30, 419. A.L.W. was diagnosed with asthma and acute bronchitis, prescribed medication, and discharged. R. 30, 419. A.L.W. returned on April 22, 2013, at which time Dr. Roque noted, among other things, that his chest was clear to auscultation. R. 419-20. A.L.W. was diagnosed with asthma, allergic rhinitis, and GERD, and referred to a pulmonary specialist. R. 30, 420.

On May 11, 2013, A.L.W. presented to the emergency room at Baptist Medical Center East, complaining of fever, cough, and congestion. R. 30, 425-39. He was diagnosed with fever, otitis media, and upper respiratory infection. R. 30, 428. His prescriptions included ten days of amoxicillin. R. 436. He was not in respiratory distress, and his breath sounds were normal. R. 30, 428. An x-ray of his chest revealed his lungs were normal. R. 30, 433.

A June 2013 note from Eastern Oaks Child Development Center indicates that jumping and exercising caused A.L.W. to cough uncontrollably and wheeze. R. 30, 161. A.L.W. was advised to see a doctor, and, as a result, the Center adopted a procedure in which it "must administer three doses of Albuterol and Xopenex, per doctor's orders, to keep his condition to a minimum and to

13

control any flare ups." R. 161.

Relying on *Ellington o/b/o C.S. v. Astrue*, 2:07-cv-789-CSC, 2008 WL 1805435 (M.D. Ala. 2008), Vinson faults the ALJ for not discussing Listing 103.03 subpart C in the decision. Pl.'s Br. 9, 10, Doc. No. 11. *Ellington* is distinguishable from Vinson's case. In *Ellington*, a child presented symptoms applicable to multiple listings, including ADHD (Listing 112.11), psychotic disorder (Listing 112.03), and personality disorder (Listing 112.08). The ALJ's failure to specify in the discussion which listing did not apply, and why, prevented the Court in *Ellington* from determining whether the adverse findings were supported by substantial evidence. *Id.* at *8-9; *see also Mixon v. Astrue*, No. 2:10-CV-98-TFM, 2011 WL 867213, at *5 (M.D. Ala. Mar. 14, 2011) (discussing *Ellington*), *and see Ellington o/b/o C.K.S. v. Astrue*, 927 F. Supp.2d 1257, 1270-71 (M.D. Ala. 2013) (again remanding after further history of *Ellington*).

Here, Vinson does not suggest that A.L.W. should be evaluated under any Listing other than asthma, and the ALJ discussed whether A.L.W. met that Listing. Vinson does not cite, and the Court has not found, authority requiring the ALJ to address every subsection of a Listing. The ALJ summarized the evidence, and the ALJ determined that A.L.W. does not meet or medically equal a listed impairment, and the ALJ articulated the basis for his decision. This finding is supported by the opinion from Dr. Heilpern, whose medical review concluded A.L.W. does not meet, medically equal, or functionally equal a listing, and the decision is supported by substantial evidence in the record, including the records from A.L.W.'s treating physician, Dr. Gutierrez. *See Jones ex rel. T.J.J. v. Astrue*, 1:10-CV-328-TFM, 2011 WL 1706465, at *7 (M.D. Ala. May 5, 2011) ("Perhaps, if individual aspects of the findings of the ALJ were taken in isolation and to the complete exclusion as to the balance of the opinion, one could argue that the ALJ failed to comply with the requirements to articulate her findings; however, the Court finds that the ALJ's decisions were

14

`well-articulated' as required.") (discussing *Williams v. Barnhart*, 186 F. Supp. 2d 1192, 1200 (M.D. Ala.2002)).

## V.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

DONE this 18th day of February, 2016.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE